IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RONNIE K. BAYLEY                                                 PLAINTIFF

vs.                                Civil No. 04-6107

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                     DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

      Ronnie K. Bayley (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his application for disability insurance benefits, (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

      Both parties have filed appeal briefs (Doc. #9 & 10). The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted herein, except as is necessary.

      Plaintiff alleges that he is disabled due to: diverticulitis; pain; L3-4 disc dessication and posterior broad based bulge causing mild bilateral neural foraminal narrowing; post surgical right hemilaminectomay at L4-5 with posterior disc bulge and facet hypertrophy causing mild central canal stenosis and moderate to severe bilateral neural foramina narrowing; posterior disc bulge which is eccentric to the right at L5-S1, with facet hypertrophy causing moderate to severe narrowing of the right neural foramina; degenerative disc changes greatest at C5-6 and C6-7;

mild effacement of the cervical cord due to a small right herniated nucleus pulposus at C5-6; a left herniated nucleus pulposus at C6-7; small left herniated nucleus pulposus at T2-3 with mild effacement of the cord; fibromyalgia; sensitivity to temperature extremes; diabetes; headaches; muscle spasms; anxiety; depression; hypothyroidism; and, pain. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence. The Plaintiff asserts that the Administrative Law Judge (hereinafter "ALJ"), erred in rendering a decision finding Plaintiff not disabled (Doc. #1 & 9).

The Plaintiff's administrative hearing was conducted on October 14, 2003 (T. 23-71). The ALJ issued his final written decision denying Plaintiff's applications for benefits on April 20, 2004 (T. 15-20). Plaintiff then sought review by the Appeals Council (T. 10). The Appeals Council denied Plaintiff's request for review on June 25, 2004 (T. 7-9), thereby making the decision of the ALJ the final decision of the Commissioner.

From this adverse decision, the Plaintiff appeals (Doc. #1, 9). This matter is before the undersigned by consent of the parties (Doc. #4).

**<u>Relevant Law:</u>**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.*

AO72A
(Rev. 8/82)

We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f).* If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

On appeal, Plaintiff makes the following arguments for reversal of the Commissioner's decision to deny his application for DIB benefits: the decision is not supported by substantial evidence; the ALJ allowed his own opinion to interfere in determining Plaintiff's credibility; the ALJ erred by finding Plaintiff retained the residual functional capacity to perform a full range of light work; the ALJ failed to acknowledge Plaintiff's exertional and nonexertional impairments which resulted in an incomplete basis for the determination of Plaintiff's RFC; and, the ALJ erred in failing to have a vocational expert present to assess Plaintiff's limitations (Doc. #9, p. 2).

The undersigned has thoroughly reviewed the administrative record and the briefs of the parties. It should be noted that Plaintiff's last argument is without merit, as it is not tethered to the record in this matter. The ALJ not only produced a vocational expert (hereinafter "VE") at the administrative hearing, he questioned the VE and made the VE available to Plaintiff's counsel for questioning (T. 65-69). The ALJ posed three hypothetical questions to the VE during the administrative hearing.

The record reflects that the ALJ found that the medical evidence established that Plaintiff suffered from impairments which were severe, but did not meet the criteria of any listed impairment (T. 17). The ALJ properly noted that the relevant time period for Plaintiff's DIB claim began with his alleged onset date of disability, December 31, 1998, and ends with the date Plaintiff was last insured, June 30, 2001 (T. 26, 15).

Throughout his decision, the ALJ singularly considered some of Plaintiff's alleged impairments, with single sentences or paragraphs being devoted to the analysis of each impairment (T. 15-20). In doing so, the ALJ discussed Plaintiff's alleged impairment at issue, in conjunction with Plaintiff's treatment for same. However, he failed to consider the combined effect of these, and other documented conditions. For instance, the ALJ mentioned Plaintiff's allegations of history of cervical fusion (T. 16), chronic neck and back pain (T. 16), cryodenervation procedure at C5-6, C6-7, C7-T1, T1-2, and T2-3 (T. 16), degenerative disc disease of cervical and thoracic spine (T. 17), chronic pain and muscle spasms (T. 17), fibromyalgia (T. 17), fatigue (T. 17), osteoarthritis (T. 17), diabetes mellitus (T. 17), depression (T. 18), and anxiety (T. 18) singularly, but never considered the combined effect of the impairments he found to be severe. Nor did the ALJ consider the combination of Plaintiff's impairments in conjunction with the allegations of pain (T. 35, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 50, 55, 56, 57, 63, 138, 139, 146). Likewise, the ALJ failed to acknowledge the medications prescribed to Plaintiff during the relevant time period or the side effects thereof (T. 38, 46, 124, 126, 139, 140, 151, 188, 192, 193, 199, 199, 316-317, 61, 62).

20 C.F.R. § 423 (d)(2)(B) provides:

In determining whether an individual's physical or mental impairment or

impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

The ALJ is required to consider all impairments he finds to be severe. Likewise, he is required to consider the combined effect of all impairments he finds to be severe. *See 42 U.S.C. § 1382c(a)(3)(F); See also 20 C.F.R. § 404.1523.* In this instance, the body of the ALJ's decision is unclear as to which impairments he finds to be severe. At the beginning of the decision, the ALJ states:

> The medical evidence shows that claimant has a history of degenerative joint disease and degenerative disc disease, with history of cervical fusion and surgery on one knee, and medical treatment for pain associated with those impairments. Thus, the undersigned concludes that the claimant had medically determinable severe impairments prior to the expiration of his insured status on June 30, 2001.

(T. 15-16).

However, within the itemized findings at the conclusion of his decision, the ALJ found:

> 3. [Plaintiff] has degenerative disc disease and degenerative joint disease, but on or before June 20, 2001, he did not suffer an impairment or a combination of impairments of such severity as to meet or equal the requirements of any impairments listed in Listing 1.00 et seq., 9.00 et seq., 11.00 et seq., 12.00 et seq., or the requirements of any other impairment listed in Appendix 1, Subpart P, Regulations No. 4

(T. 19).

Nonetheless, despite his solitary statement that these impairments represent severe impairments, he failed to otherwise consider the issue of whether this severe combination of impairments, together with the alleged pain result in a finding of disability. The apparent failure

-6-

to consider these subjective allegations in relation to what he deemed to be severe impairments necessarily leads to the conclusion that the ALJ failed in his duty to consider the combined effect of all of Plaintiff's impairments.

The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991), citing Johnson v. Secretary of Health & Human Servs., 872 F.2d 810, 812 (8th Cir. 1989)*. In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs., 733 F.2d 571, 573 (8th Cir. 1984) and Wroblewski v. Califano, 609 F.2d 908, 914 (8th Cir. 1979)*. As has been noted, the Plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000)*.

A thorough review of the record also indicates that the ALJ failed to properly analyze Plaintiff's subjective allegations. In determining whether the ALJ properly disregarded Plaintiff's subjective complaints, such as pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted)*,* in evaluating his pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

AO72A
(Rev. 8/82)

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).*

Thus, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)*. The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993)*.

Further, in evaluating the *Polaski* factors, the ALJ must "discuss" those factors in the hearing decision. *Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 9580-950 (8th Cir.1984))*.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, *739 F.2d at 1322.*

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, *830 F.2d 878, 882 (8th Cir.1987)*. The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, *862 F.2d*

-8-

*176, 179 (8th Cir.1988).*

In this case, the ALJ recited the requirements of *Polaski* (T. 17). However, he failed to comply with the dictates of *Polaski*. In fact, following his listing of the Polaski factors, the ALJ goes on to discuss the opinion of a treating physician rather than conducting the proper *Polaski* analysis (T. 17). Without making a specific determination of Plaintiff's credibility, the ALJ did eventually discuss the Plaintiff's activities of daily living. Within the text of the decision, the ALJ made the following determination: "prior to June 30, 2001, [Plaintiff] has engaged in daily activities at levels inconsistent with an individual experiencing debilitating pain and/or other debilitating health impairments" (T. 18). With respect to subjective allegations and nonexertional limitations, the ALJ failed to state his specific finding as to Plaintiff's credibility (T. 18). The ALJ also failed to mention or discuss Plaintiff's 33 year work record with Illinois Bell Telephone (T. 30-34).

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, 783 F.2d at 130 (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

Here, the ALJ also failed to meaningfully examine the *Polaski* factor of dosage and side effects of medication. *See Polaski v. Heckler*, 739 F.2d at 1321-22. The ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir.1991) ("it is not enough that inconsistencies may be said to

AO72A
(Rev. 8/82)

exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, 783 F.2d at 131 (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

During the relevant time period, Plaintiff was prescribed a number of medications, including: Vioxx; Valium; Zoloft; Celebrex; Lipitor; Synthroid; Vicodin; Quinine Sulfate; Zyrtec; Metronidazol; Diazepam; Wellbutrin; Amitriptyline; Clonazepam; Neurontin; Hydrocodone; Flexeril; Skelaxin; Ultram; Librax; and, epidural steroid injections. However, the ALJ failed to acknowledge the large amounts of prescribed medications, their side effects or the interactions thereof, within his decision. In fact, the ALJ's only reference to Plaintiff taking any medication appears in the paragraph in which he finds that Plaintiff is not disabled due to his alleged mental health diagnoses (T. 18). The record clearly establishes that Plaintiff was prescribed a number of pain medications. However, the ALJ failed to conduct a proper analysis of this evidence pursuant to *Polaski*.

Plaintiff also alleged that he suffered from the impairment of fibromyalgia. The term "myalgia" indicates muscular pain. Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Any of the fibromuscular tissues may be involved, but those of the occiput, low back, neck, shoulders, thorax, and thighs are especially affected. Fibromyalgia occurs mainly in women. This condition may be induced or exacerbated by physical or mental stress, poor sleep, trauma, exposure to dampness or cold, and occasional by a systemic, usually rheumatic disorder. A viral or other systemic infection may precipitate the syndrome in a person who may be otherwise predisposed. Diagnosis is

recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. In localized forms, symptoms are more often sudden and acute. The pain is aggravated by straining or overuse. Tenderness, tightness and/or muscle spasms may occur. The onset of pain and stiffness can be gradual, diffuse and achy. However, in localized forms, symptoms are more often sudden and acute. In milder cases, fibromyalgia can remit spontaneously with decreased stress. Yet, the condition may become chronic or recur at frequent intervals. See *The Merck Manual,* pp. 1369-1371 (16th Edition, 1992). Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient who really has fibromyalgia to flinch. *Id.*

Plaintiff was diagnosed with fibromyalgia during the relevant time period. Plaintiff testified that his treating physician found the appropriate number of tender points (a.k.a. "trigger points") (T. 41-42). Additionally, on August 31, 2000, Dr. Cheryl Pilkington, Plaintiff's treating physician, noted Plaintiff had "several tender points in the muscles, consistent with fibromyalgia" (T. 272). On June 7, 2000, Dr. Pilkington noted that Dr. Cook[1] had previously

---

[1] The administrative record contains no treatment notes from Dr. Cook.

diagnosed Plaintiff with fibromyalgia (T. 273). The ALJ's decision fails to include analysis of Plaintiff's allegations of fibromyalgia. Aside from mentioning the existence of the allegation of fibromyalgia[2], the ALJ failed to analyze the alleged impairment singly or in combination with the other alleged severe impairments. Clearly, the ALJ has failed to provide appropriate analysis. Therefore, this case must be remanded.

The parties are each reminded of their duty to fully and fairly develop the record upon remand. The United States Court of Appeals for the Eighth Circuit has stated numerous times that it is the ALJ who has the duty to fully and fairly develop the record, even if a plaintiff is represented by counsel. *Wilcutts v. Apfel, 143 F.3d 1134, 1137-38 (8th Cir.1998).* The Commissioner acknowledges that it is her " 'duty to develop the record fully and fairly, even if ... the claimant is represented by counsel.' " *Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir.1992) (quoting Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983)).* This is so because an administrative hearing is not an adversarial proceeding. *Henrie v. Dept. of Health & Human Serv., 13 F.3d 359, 361 (10th Cir. 1993).* "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Battles v. Shalala, 36 F.3d 43, 44 (8th Cir.1994).* Upon remand, the records of Dr. Cook should be obtained.

Further, upon remand, the testimony of the witnesses, as well as any physician opinion[s] should pertain to Plaintiff's relevant time period for purposes of DIB. The relevant time period was determined to be December 31, 1998, through June 30, 2001. Plaintiff did not challenge the accuracy of these dates on appeal.

---

[2]The only mention of fibromyalgia is made at page 17 of the administrative transcript.

AO72A
(Rev. 8/82)

**Conclusion:**

Accordingly, we conclude that the decision of the Commissioner denying benefits to the Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for proceedings consistent with this opinion.

ENTERED this 16th day of September, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

-13-

AO72A
(Rev. 8/82)